[No. 8482–5–III.   Division Three.   June 30, 1988.]

THE STATE OF WASHINGTON, *Respondent,* v. DALE THOMAS
WATSON, *Petitioner.*

*Harry Ries* and *Ries & Kenison,* for petitioner.

*Paul A. Klasen, Jr., Prosecuting Attorney,* and *Peter
Wales* and *Jerald Hamley, Deputies,* for respondent.

THOMPSON, J.—Dale Thomas Watson seeks review of the denial of his motion to suppress the results of a Breathalyzer test. He was convicted in district court of driving while under the influence of intoxicating liquor, former RCW 46.61.502. We reverse.

Mr. Watson was arrested in August 1984 after a state trooper observed him driving erratically. Mr. Watson was given a Breathalyzer test, which revealed a .19 percent blood alcohol content. Before trial, Mr. Watson requested that the State produce the Breathalyzer maintenance operator at trial, and filed a motion to suppress the Breathalyzer test results. At the suppression hearing, the State was unable to provide proof that the Breathalyzer machine had been calibrated before Mr. Watson's test, but Trooper Gregory McNeilly testified he had checked the machine 9 days after it was used to test Mr. Watson. He testified the machine was working properly at that time, and it was his opinion it was working properly the day Mr. Watson was tested. Edward J. Formoso, a chemist at the Washington State Toxicology Laboratory, testified Breathalyzer machines that develop problems are not "self–correcting". The trial court held the Breathalyzer test results were admissible.

At trial, the State presented the Breathalyzer test results, as well as testimony of Trooper Workman, who described Mr. Watson's activities on the evening of his arrest.

The jury returned a guilty verdict. On appeal to the Superior Court, the District Court's denial of Mr. Watson's motion to suppress was affirmed. Mr. Watson sought review by the Supreme Court. The Supreme Court transferred the case to this court.

The issue is whether Breathalyzer test results should be suppressed when the State's only evidence that the machine was working properly was that the machine was checked 9 days after the test. The State cites *State v. Terrell*, 38 Wn. App. 187, 684 P.2d 1318 (1984) for the proposition that an arbitrary and capricious standard of review

applies. At issue in *Terrell* was whether dismissal was required under local King County rules, a matter within the discretion of the trial court. *Terrell,* at 189. During the motion to suppress, the trial court was applying statutory, decisional, and administrative law to undisputed facts. The issue is a matter of law, and is subject to independent review on appeal. *See Fisher v. World–Wide Trophy Outfitters,* 15 Wn. App. 742, 551 P.2d 1398 (1976). Issues regarding the admissibility of Breathalyzer test results are addressed as a matter of law. *See State v. Baker,* 56 Wn.2d 846, 355 P.2d 806 (1960); *State v. Peterson,* 100 Wn.2d 788, 674 P.2d 1251 (1984).

In order to admit results of Breathalyzer tests, the State must introduce prima facie evidence to show that the Breathalyzer machine was checked and in proper working order at the time the test was conducted. *Baker,* at 852. The court in *Peterson* held that, in adopting former RCW 46.61.502, the Legislature created a presumption that a Breathalyzer machine will function properly for 3 months if it is maintained under a schedule provided in WAC 448–12–015:

> Checking of breathalyzer machines. At least once every three months a maintenance operator must check and calibrate a breathalyzer machine. In making that check the maintenance operator must follow all of the steps provided for in WAC 448–12–020. A record must be kept with the machine and the maintenance operator must record the date of test, control number of the ampoule used, and whether the machine is or is not in proper working order.
>
> If the machine tested is in proper working order, then all ampoules bearing the same specific control number as the ampoule used in the test are suitable for use in the machine.

The State does not argue that the check of the Breathalyzer machine by Officer McNeilly, 9 days after Mr. Watson's test, constituted compliance with WAC 448–12–015. While in a given case substantial compliance may suffice, in this case there was simply no demonstrated compliance. No

proof was admitted indicating the machine had been checked and calibrated at least every 3 months. No evidence was provided that the required record was kept, dates of tests, control number of ampul used or whether the machine was or was not in proper working order during these required tests.

Nevertheless, the State directs our attention to Officer McNeilly's testimony that the machine was checked 9 days after Mr. Watson's test, and Mr. Formoso's testimony that Breathalyzer machines are not "self–correcting". The State contends this evidence was an acceptable alternative method of proving the machine was in proper working order at the time of Mr. Watson's test.

■ "To be valid an analysis of breath . . . 'shall have been performed according to methods approved by the state toxicologist'. RCW 46.61.506(3)." *State v. Ford,* 110 Wn.2d 827, 829, 755 P.2d 806 (1988). Among the regulations adopted by the State Toxicologist is WAC 448–12–015. Thus, by statute, a Breathalyzer test is *valid* only if the machine is maintained in accordance with this regulation. In *State v. Ryan,* 43 Wn. App. 488, 717 P.2d 1390 (1986), the court observed that, in order for the *Baker* requirement to be satisfied, "a maintenance operator must follow the directives of WAC 448–12–015". *Ryan,* at 490 (citing *Peterson*). Compliance with WAC 448–12–015 is the exclusive method of establishing admissibility of Breathalyzer results.[1]

The dissenting opinion argues the test results were admissible under common law evidentiary principles.

In the context of traffic offenses, however, specialized statutes and regulations have largely supplanted the application of the common law principles and evidence codes in determining the admissibility of blood and

---

[1]*See* CrRLJ 6.13(e), which provides for suppression of the Breathalyzer test results if evidence of the machine's working order is insufficient. Here, the State failed to obtain the presence of the maintenance technician, as required by the defendant's request pursuant to CrRLJ 6.13(b)(2)(iii), and the State thus was unable to prove the machine was in proper working order.

breath test evidence. . . . In most jurisdictions, a party offering test results pursuant to such a statute must lay a foundation by producing witnesses to explain the way the test is conducted, to identify it as duly approved under the statutory scheme, and to vouch for its correct administration in the particular case.

(Footnotes omitted.) E. Cleary, *McCormick on Evidence* § 205, at 617 (3d ed. 1984).

The additional evidence offered here by the State directly addressed the *reliability* of the test on Mr. Watson. Matters relating to reliability go to weight, rather than to admissibility. *Peterson,* at 792. Cases cited by the State show that, once the Breathalyzer evidence is rendered admissible by demonstrating compliance with administrative regulations, the defendant may attack the machine's reliability by presenting evidence to the jury. *See State v. Franco,* 96 Wn.2d 816, 639 P.2d 1320 (1982); *Bremerton v. Osborne,* 66 Wn.2d 281, 401 P.2d 973 (1965). We agree that the State, too, may present such reliability evidence to the jury. *See State v. Mattila,* 52 Or. App. 743, 629 P.2d 845 (1981). However, before such evidence is presented, the State first must establish the prima facie *admissibility* of the Breathalyzer results by demonstrating compliance with WAC 448–12–015. The State failed to do so, and the Breathalyzer results should not have been admitted.

The State argues that the court's failure to suppress the Breathalyzer results was not prejudicial to Mr. Watson, because there was other overwhelming evidence to convict him. The arresting officer testified to observations and roadside tests which, if believed, would provide sufficient evidence to support a conviction. However, we cannot agree with the State that, based on this evidence, we can conclude failure to suppress was not prejudicial.

The jury was instructed:

To convict the defendant of the crime of driving while under the influence of intoxicating liquor or drugs each of the following elements of the crime must be proved beyond a reasonable doubt:

> (1) That on or about the 17th day of August, 1984, the defendant operated a motor vehicle in the State of Washington;
> (2) That while the defendant operated a motor vehicle:
> (a) He had .10 percent or more by weight of alcohol in his blood as shown by chemical analysis of his breath, blood or other bodily substance, or
> (b) He was under the influence of or affected by intoxicating liquor.
> (3) That these acts occurred in Grant County, Washington.

This instruction correctly reflected the fact that former RCW 46.61.502 contained alternative means by which a person may commit the crime of driving while intoxicated. *See State v. Franco, supra.* This court has no way of knowing whether the jury convicted Mr. Watson solely on the basis of the test results or on the other evidence indicating he was under the influence of alcohol.

An instruction erroneously given on behalf of the party in whose favor the verdict was returned is presumed prejudicial unless it affirmatively appears it was harmless. *State v. Rice,* 102 Wn.2d 120, 123, 683 P.2d 199 (1984); *State v. Golladay,* 78 Wn.2d 121, 139, 470 P.2d 191 (1970). A jury is presumed to follow the instructions of the court, *State v. Grisby,* 97 Wn.2d 493, 499, 647 P.2d 6 (1982), *cert. denied,* 459 U.S. 1211, 75 L. Ed. 2d 446, 103 S. Ct. 1205 (1983). Here, the instructions permitted the jury to convict Mr. Watson solely on the basis of the improperly admitted Breathalyzer results. The error was not harmless.

The Breathalyzer results should not have been admitted. Therefore, we reverse the conviction and remand for a new trial.

McINTURFF, C.J., concurs.

GREEN, J. (dissenting)—The majority suppresses the results of Mr. Watson's Breathalyzer test because it finds compliance with WAC 448–12–015 to be the "exclusive

method" to establish the admissibility of the results. I disagree and therefore dissent.

The majority opinion acknowledges (a) Trooper McNeilly checked the Breathalyzer machine 9 days after it was used to test Mr. Watson and found it worked properly at that time; and (b) an expert from the state toxicology laboratory testified that when such machines develop problems, they are not "self-correcting". Based on this testimony, it is an inescapable conclusion that the machine was operating properly on the day of Mr. Watson's test.

In order to admit Mr. Watson's Breathalyzer results, the majority requires a showing that the maintenance procedures outlined in WAC 448–12–015 were followed prior to the time of the test. Based upon *State v. Ryan,* 43 Wn. App. 488, 717 P.2d 1390 (1986), the majority concludes compliance with WAC 448–12–015 is the exclusive method to establish admissibility. Not only does this regulation not provide such exclusivity, *Ryan* also does not support this conclusion. In that decision, the defendant challenged that admissibility of his Breathalyzer test results on the basis the ampul used in his test was from a different batch than that used when the machine was tested by the maintenance operator. Since the ampul batch used in Mr. Ryan's test had not been previously checked in the machine, WAC 448–12–015 was violated and his test results were inadmissible. *Ryan,* at 492. In sum, the decision holds only that the test administered upon Mr. Ryan was defective because of an unchecked ampul. Here, the procedure used in administering the test is not challenged. On the record before us, the test was properly administered. In my view, neither the statute nor administrative regulations nor decisional law require a specific procedure be followed as a condition to the admission of a validly administered test. The only question is whether the machine was in proper working order at the time of the test. The unchallenged testimony is that it was working properly on the day the test was administered. Since the Breathalyzer test results are clearly

954

relevant and credible, the trial court did not abuse its discretion in admitting the results.

The thrust of *State v. Peterson,* 100 Wn.2d 788, 674 P.2d 1251 (1984); *State v. Baker,* 56 Wn.2d 846, 355 P.2d 806 (1960); *State v. Ryan, supra,* and legislation governing the administration of Breathalyzer tests is to assure the accuracy, validity and credibility of the Breathalyzer test results. As recently stated in *State v. Ford,* 110 Wn.2d 827, 833, 755 P.2d 806 (1988): "The ultimate concern of the judiciary is that the methods approved result in an accurate test, competently administered, so that a defendant is assured that the test results do in fact reflect a reliable and accurate measure of his or her breath content." Here, there is unrebutted evidence the machine was operating properly and the test results were accurate. This direct evidence is stronger than the presumption created by WAC 448–12–015 arising from a maintenance check that could have been performed up to 90 days before the test was administered. The evidence was properly admitted by the trial judge. Thus, I would affirm the conviction.