OPINION
Defendant-appellant, Roger W. Bosier, appeals the trial court's denial of his motion to suppress evidence of breath alcohol testing and the trial court's decision to allow the state to amend the indictment against him.
On March 8, 1999, Joshua Riley, a city of Wilmington police officer, observed appellant pull into an intersection in front of another vehicle. Patrolman Riley pulled appellant's car over and observed that appellant mumbled when he spoke, and that his eyes were watery and glazed. Patrolman Riley noticed a moderate odor of intoxicants and asked appellant if he had been drinking. Appellant admitted that he had a few drinks after work. Patrolman Riley administered field sobriety tests which indicated that appellant was impaired. Appellant was transported to the Wilmington police station where he consented to a breath test.
Patrolman Riley began the first breath test and observed the numbers on the machine's display steadily climbing to a reading of .127 when the machine printed a ticket stating "INVALID SAMPLE." Patrolman Riley placed this ticket in the case file and within a minute or two, performed a second breath test on appellant. This test indicated appellant's alcohol level was .122 grams of alcohol per two hundred ten liters of breath.
Appellant was indicted for driving under the influence pursuant to R.C 4511.19(A)(1) on March 31, 1999. The indictment charged appellant with a fourth degree felony since he had previously been convicted of three violations of R.C. 4511.19 or similar statutes. Appellant filed a motion to suppress the results of the breath testing. On September 29, 1999, the trial court overruled the motion. After the hearing on the motion to suppress, the court allowed the state to amend the indictment to a violation of R.C.4511.19(A)(3), the per se driving under the influence section of the statute. Due to the amendment, the court stated that appellant could have a continuance, if necessary. Appellant pled no contest to the amended charge and the court found him guilty.
Appellant appeals the trial court's denial of the motion to suppress and the trial court's decision to allow the state to amend the indictment and raises the following two assignments of error:
Assignment of Error No. 1:
 THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS THE RESULTS OF HIS BREATH TEST FROM EVIDENCE.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED WHEN IT PERMITTED AMENDMENT OF THE INDICTMENT.
In the first assignment of error, appellant contends that his motion to suppress should have been granted because the state did not establish substantial compliance with two Ohio Department of Health (ODH) requirements. When establishing admissibility of breath testing results, rigid compliance with the Ohio Department of Health (ODH) regulations is not required. State v. Plummer (1986), 22 Ohio St.3d 292, 294. Absent prejudice to the defendant, if the prosecution shows substantial compliance with the regulations, the results of the alcohol test may be admitted into evidence. Id.
Appellant argues that the state did not show substantial compliance with the ODH regulation requiring a twenty-minute observation period before conducting a breath test. Pursuant to OAC 3701-53-02, breath samples must be analyzed according to an operational checklist for the instrument being used. The checklist for each type of machine requires a twenty-minute observation period before a test can be performed. The purpose of the observation rule is to provide evidence that during the twenty minutes prior to the test, the defendant did not ingest some material that would produce an inaccurate test result. In re EricW. (1996), 113 Ohio App.3d 367, 372.
Patrolman Riley testified that he observed appellant for twenty minutes before he began testing. However, appellant argues that Patrolman Riley should have initiated another twenty-minute observation period after the first failed attempt at testing and before the second attempt. As support, appellant relies on a memo sent by the ODH Bureau of Alcohol and Drug Testing to all sites which conduct breath alcohol testing. The memo states that an "INVALID SAMPLE" indication on the machine is to be handled by initiating a new twenty-minute observation period.
Craig Sutheimer, the chief of the Bureau of Alcohol and Drug testing, testified that the reason for the memo was to avoid the numerous requests for testimony in court about the possibility of an "INVALID SAMPLE" being the result of mouth alcohol. Sutheimer stated that there is no rule in place which requires officers to wait an additional twenty minutes before conducting a second test. He indicated that an "INVALID SAMPLE" printout does not invalidate a subsequent test. Based on the description of the machine's display steadily climbing to a reading of .127 before printing "INVALID SAMPLE," and the results of the second test, Sutheimer indicated that he did not believe the failed test was the result of mouth alcohol.
Although the Department of Health memo states that an "INVALID SAMPLE" response on the machine is to be handled by initiating a new twenty-minute observation period, the expert testimony in this case indicates that the memo was drafted to avoid the necessity of expert testimony in cases such as this one. Sutheimer did not believe the "INVALID SAMPLE" in this case was a response to mouth alcohol and did not testify to any reason why the results of the second test should be invalidated. Patrolman Riley testified that he believed the "INVALID SAMPLE" response was due to appellant not blowing hard enough into the machine. Sutheimer testified that not blowing hard enough into the machine would result in an "INSUFFICIENT SAMPLE" response, not "INVALID SAMPLE." Instead, Sutheimer stated that particulates, water droplets, or intermittent ground were more likely causes of the invalidated test, and these causes would not invalidate the second test.
We find substantial compliance with the twenty-minute observation rule. The purpose of the twenty-minute rule is to ensure that the subject does not place some material in the mouth that would produce an inaccurate test result and there is no evidence that appellant placed any material in his mouth. Sutheimer stated that the purpose of the ODH memo requiring a second twenty-minute observation period was to avoid repeated testimony in cases precisely like this one, where he is called into court to testify about whether the "INVALID SAMPLE" was the result of mouth alcohol. There is no evidence indicating the invalid test was the result of mouth alcohol, nor any evidence suggesting that the second test was inaccurate. As such, we find substantial compliance with the regulations and that appellant was not prejudiced by the lack of a second twenty-minute waiting period.
Appellant also contends that the state did not establish substantial compliance with the requirement that records be kept of each test. Appellant argues that placing the "INVALID SAMPLE" ticket in the case file, and not in the notebook where the test results were kept, does not amount to substantial compliance.
OAC 3701-53-01 (A) provides that the "results of the tests shall be retained for not less than three years." We have stated that "rigid compliance with the three-year specification in the ODH record keeping is not required where the records themselves are not shown to be misleading, inaccurate or incomplete." Statev. Morton (May 10, 1999), Warren App. No. CA98-10-131, unreported, at 8.
OAC 3701-53-01(A) states:
 Tests to determine the concentration of alcohol may be applied to blood, urine, breath, or other bodily substances. Results shall be expressed as equivalent to:
 (1) Grams by weight of alcohol per one hundred milliliters of blood * * *;
 (2) Grams by weight of alcohol per two hundred ten liters of deep lung breath;
 (3) Grams by weight of alcohol per one hundred milliliters of urine * * *.
The results of the tests shall be retained for not less than three years.
Sutheimer testified that an "INVALID SAMPLE" reading does not contain any additional information. The machine prints a ticket which states only "INVALID SAMPLE," and no other information required by OAC 3701-53-01(A). As such, we find an "INVALID SAMPLE" reading is not a "result" as described in the administrative code. Although the better practice may be to retain records of all attempted tests, appellant was not prejudiced in this case because the actual ticket contains no further information. In addition, the ticket at issue is still available, as it was not thrown away, but was placed in the case file. The state has established substantial compliance with the ODH regulations and appellant's first assignment of error is overruled.
In his second assignment of error, appellant contends that the trial court erred by allowing the state to amend the indictment. Crim.R. 7 provides the circumstances under which an indictment can be amended:
 The court may at any time before, during, or after a trial amend the indictment, information, complaint, or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged.
Crim R. 7(D).
The original and the amended charges are both found in R.C.4511.19, which states:
 (A) No person shall operate any vehicle, streetcar, or trackless trolley within this state, if any of the following apply:
 (1) The person is under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse:
 (2) The person has a concentration of ten-hundredths of one percent or more by weight of alcohol in his blood;
 (3) The person has a concentration of ten-hundredths of one gram or more by weight of alcohol per two hundred ten liters of breath;
 (4) The person has a concentration of fourteen-hundredths of one gram or more by weight of alcohol per one hundred milliliters of his urine.
The indictment was amended from a violation of R.C.4511.19(A)(1) to a violation of R.C. 4511.19(A)(3). Appellant contends that the amendment changed the name and identity of the crime because a violation of subsection (A)(1) requires different proof than a violation of subsection (A)(3). In a similar case, the Ninth District Court of Appeals found that amending a charge of driving with a prohibited breath level to a prohibited urine level did not change the nature of the crime. Newark v. Belt (Sept. 18, 1984), 1984 WL 3881 at *1, Licking Co. App. No. CA-3034. Under similar facts, another appellate district concluded that changing an indictment from a violation of the blood-alcohol level subsection to a violation of breath-alcohol subsection violated Crim.R. 7(D). State v.Marinik (1989), 57 Ohio App.3d 110, 112. Other courts have found that amendments should be allowed in cases where the original charging instrument did not specify which subsection was allegedly violated or did not specify the type of intoxicant. Cleveland Heights v. Perryman (1983), 8 Ohio App.3d 443;State v. Walz, (Nov. 7, 1984), 1984 WL 7053, Hamilton Co. App. No. 840174. In 1983 Ohio's DUI laws were amended, and four subsections of the offense "Driving While Intoxicated" were created. Under the old code section, a blood alcohol concentration of .10 created a rebuttable presumption that the person was under the influence of alcohol. The amendments created the four subsections above and detailed the concentrations of alcohol to breath, blood and urine which are prohibited. The four subsections of the amended DUI statute were found to create separate offenses, and not presumptions of driving under the influence. State v. Wilcox (1983), 10 Ohio App.3d 11,13. In making this determination, the Fifth District Court of Appeals examined a challenge to a similar law in another state in which the court found that "under the statute there are three alternate ways of committing the crime entitled DWI. The statute does not presume, it defines." Id., quoting State v. Franco (1982),96 Wn.2d 816, 821, 639 P.2d 1320. In an examination of a challenge to the amended law, the Ohio Supreme Court found the maximum blood level of .10 percent did not create an unconstitutional presumption of guilt. Instead, the court found that the amended statute "defin[ed] the point the legislature has determined an individual cannot drive without posing a substantial danger, not only to himself, but to others." State v. Tanner (1984), 15 Ohio St.3d 1, 6.
Appellant argues that changing the indictment from a violation of R.C. 4511.19(A)(1) to (A)(3) changed the nature and identity of the crime he was charged with. We disagree. Although four separate offenses were created in R.C. 4511.19, the general offense remains the same. The specific provisions which detail prohibited levels of alcohol to breath, blood and urine define the level of alcohol the legislature has determined creates a risk of harm.
"The purpose of a charging instrument, be it an indictment, information or complaint, is to inform the accused that a charge has been lodged against him and to provide him with an indication of the nature of that charge." Middletown v. Blevins (1987),35 Ohio App.3d 65, 67. Appellant was charged with "driving under the influence." The subsections above define four ways to establish a DUI violation. Appellant was aware that he was charged with driving under the influence and was aware of the nature of the charge against him. The general offense with which he was charged remained the same. The conduct which led to the offenses, consumption of alcohol and operating a motor vehicle, remained the same.
In addition, appellant was not prejudiced by the amendment of the indictment. He was charged with violation of subsection (A)(1) and filed a motion to suppress the evidence of breath testing. He had full opportunity to challenge the accuracy of the test, as demonstrated by the first assignment of error. The trial court also offered appellant the opportunity for a continuance after allowing amendment of the charge to subsection (A)(3). Accordingly, appellant's second assignment of error is overruled.
 _____________________________ POWELL, P.J.
YOUNG and VALEN, JJ., concur.