[No. 1658-2. Division Two. November 23, 1976.]

THE STATE OF WASHINGTON, *Respondent*, v. MICHAEL DENNIS, *Appellant*.

*Dan Glenn* and *Buzzard & Glenn,* for appellant (appointed counsel for appeal).

*Patrick D. Sutherland, Prosecuting Attorney,* and *Ed Schaller, Jr., Deputy,* for respondent.

REED, J.—Defendant Michael Dennis appeals from his conviction in Thurston County Superior Court of unlawful possession of cocaine, contending the trial court erred in refusing to suppress certain evidence, without which his conviction cannot stand. The issue framed by his appeal is: Was defendant's Fifth Amendment privilege against self-incrimination violated because (1) the evidence was compelled by a custodial interrogation; and (2) the production of the evidence was in itself a testimonial response which should have been preceded by *Miranda* warnings? Our answer must be in the affirmative, and accordingly we reverse and remand for dismissal of the charge.

On November 21, 1973, Police Officers Jim Flint and Dennis C. Jones, both in mufti, drove in separate vehicles to the Dennis residence in Lacey to execute a search warrant which described the home as Apartment B-5, 3805 14th Avenue S. E. The information on which the search warrant issued was that Christina Dennis had sold cocaine to the informant that same day at the apartment and that additional quantities of the narcotic were being kept in the refrigerator.

Upon arrival at the apartment complex it was discovered that the true address of the building in which apartment B-5 was located was 3807 rather than 3805, and Officer Flint returned to the courthouse for a corrected warrant, leaving Officer Jones to maintain surveillance. Before departing, Flint told Jones he had discussed the Dennises and a possible purchase of drugs with the occupant of an adjoining apartment, and he felt she suspected he was a policeman.

During Flint's absence the defendant and his wife ar-

rived, Mrs. Dennis going directly to apartment B-5 and defendant entering the adjoining apartment when beckoned to do so by the occupant with whom Officer Flint had spoken. Believing defendant was being alerted and that the drugs would be disposed of before Officer Flint's return, Officer Jones went immediately to apartment B-5. In response to his knock, Mrs. Dennis opened the door. The officer identified himself as a policeman, displayed his badge and said he wished to speak with her husband. According to Mrs. Dennis he inserted his foot between door and jamb so as to prevent closure and then entered without invitation; he testified she granted him permission to enter. At or about this time the defendant appeared and the officer again identified himself and promptly seated himself at a nearby table which permitted him a view of the kitchen with its refrigerator. As the officer seated himself, a movement of his coat revealed he was armed.

After the Dennises also took places at the table, the officer told them he knew of the narcotics sale and that there was a supply of the drug in the refrigerator. After some general conversation the officer requested or suggested that defendant produce the drugs voluntarily and save the officer the trouble of searching, whereupon defendant inquired if he had a search warrant. The officer informed defendant either that his partner had gone to get a warrant or already had one in hand and was at the manager's office getting a key to the apartment. He then renewed his request the drugs be produced without resort to a search, and the defendant thereupon removed several packages of cocaine from the refrigerator and placed them on the table before the officer, who promptly seized them. Shortly thereafter Detective Flint returned with a corrected warrant and the apartment was searched, but no further drugs were found. Defendant was later arrested and charged with unlawful possession of cocaine.

At the hearing on defendant's motion to suppress, Officer Jones testified he had read the *Miranda* rights to the Dennises as soon as he had identified himself to them. They

both testified, however, he did so only after defendant had placed the drugs on the table. At no time did the officer place either Dennis under arrest or tell them they could not leave the premises, nor did either request permission to leave. Mrs. Dennis testified, however, that when she requested that Officer Jones move into the living room he responded: "No, because I don't like to see you take anything out of the refrigerator that I cannot see."

In its oral decision the trial court found the officer entered with permission, that the Dennises *were in custody* and that the officer failed to inform them of their *Miranda* rights until after defendant produced the drugs. The court then concluded the seizure violated defendant's Fourth and Fifth Amendment rights and suppressed the evidence. After a hearing on the State's motion for reconsideration, the trial court reversed its previous holding and concluded: (1) *Miranda* rights were not given until after defendant placed the cocaine on the table; (2) the defendant produced the evidence "freely and voluntarily without any coercion"; (3) the evidence was in "plain view" once placed on the table and could be lawfully seized; and (4) there was no violation of defendant's Fifth Amendment privilege of self-incrimination because the production of cocaine was a nontestimonial response. Defendant appeals from his subsequent conviction.

At the outset it appears neither court nor counsel considered the suppression hearing as a proceeding to determine "voluntariness" under CrR 3.5. Consequently the findings and conclusions are not in the form prescribed by that rule and do not specifically address the subject of "custodial interrogation." In any event, when dealing with a claim a statement was unconstitutionally compelled rather than voluntary, it is our duty "to examine the entire record and make an independent determination of the ultimate issue of voluntariness." *Davis v. North Carolina*, 384 U.S. 737, 741-42, 16 L. Ed. 2d 895, 86 S. Ct. 1761 (1966); *State v. Sharp*, 15 Wn. App. 585, 550 P.2d 705 (1976);

*McNear v. Rhay*, 65 Wn.2d 530, 398 P.2d 732 (1965). This we have done.

■ In *Escobedo v. Illinois*, 378 U.S. 478, 12 L. Ed. 2d 977, 84 S. Ct. 1758 (1964), the court held that the investigative process becomes accusatorial and the need for warnings is triggered at the moment the inquiry "focuses" on an accused in custody and the questioning is intended to elicit incriminating statements. The decision in *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966), was intended in part as a refinement and restatement of the *Escobedo* rule. To be admissible under *Miranda*, statements elicited by questioning a suspect who is in custody or "otherwise deprived of his freedom of action in any significant way" must be preceded by the now familiar warnings. *Miranda v. Arizona, supra* at 444. *Mathis v. United States*, 391 U.S. 1, 20 L. Ed. 2d 381, 88 S. Ct. 1503 (1968). The rule, which holds true even though the interrogation may have been conducted at some place other than the traditional station house or jail, has been extended to include questioning within the confines of the suspect's own home. *Orozco v. Texas*, 394 U.S. 324, 22 L. Ed. 2d 311, 89 S. Ct. 1095 (1969).

*Miranda* has been interpreted to mean that, if the facts and circumstances are such that a reasonable man, innocent of any crime, would believe he is in custody or that his freedom of action has been restricted in any significant way, no further questioning may take place in the absence of the warnings. *Cf. State v. Creach*, 77 Wn.2d 194, 461 P.2d 329 (1969); *People v. Merchant*, 260 Cal. App. 2d 875, 67 Cal. Rptr. 459 (1968); *People v. Ceccone*, 260 Cal. App. 2d 886, 67 Cal. Rptr. 499 (1968); *People v. Arnold*, 66 Cal. 2d 438, 426 P.2d 515, 58 Cal. Rptr. 115 (1967).

Here, even though the conversation took place in the defendant's own apartment, neither Dennis had been placed under arrest, and the officer avowed they were free to leave at any time, the atmosphere was nevertheless dominated by the officer's unwelcome presence and his insistence on remaining in a position where he could monitor

and thus restrict the occupants' freedom of movement within their home. In order to elicit incriminating responses the officer related he knew of the sale and possession of the narcotics and made it clear he believed the defendant was involved in the criminal activity. He stated that voluntary production of the evidence would merely save him the trouble of a search under a warrant already issued, *i.e.*, that he had authority to and would search in any event. Clearly defendant had reason to believe he was not free to remove anything from the refrigerator and exit the room. Under these circumstances a reasonable man in defendant's position would have believed his freedom of movement was significantly restricted and that any attempt to leave would probably result in immediate physical restraint or custody.

In addition, Officer Jones had information from a reliable informant that narcotics had been sold in the apartment that day by Mrs. Dennis and that the refrigerator contained a further supply. Thus, when he had confirmed the fact that defendant resided in the apartment, he had probable cause to believe defendant was guilty of unlawful possession and could not have been expected to permit defendant to leave. At that point the situation became custodial and defendant should have been warned of his rights. *Cf. State v. Creach, supra; State v. Cloud,* 7 Wn. App. 211, 498 P.2d 907 (1972). Officer Jones believed this to be the case because he testified unqualifiedly that he gave the warnings to both Dennises almost immediately upon entering the apartment.

■ We next consider whether defendant's act of producing the cocaine in response to the officer's urgings was testimonial in nature and its use in evidence a violation of his Fifth Amendment privilege against self-incrimination. The trial court refused to suppress because it found defendant was simply the "source of 'real or physical evidence.'" *Schmerber v. California,* 384 U.S. 757, 764, 16 L. Ed. 2d 908, 86 S. Ct. 1826 (1966); *Warden v. Hayden,* 387 U.S. 294, 18 L. Ed. 2d 782, 87 S. Ct. 1642 (1967); *Mercer Island v.*

*Walker,* 76 Wn.2d 607, 458 P.2d 274 (1969). As stated in *Fisher v. United States,* 425 U.S. 391, 408, 48 L. Ed. 2d 39, 54, 96 S. Ct. 1569 (1976):

It is also clear that the Fifth Amendment does not independently proscribe the compelled production of every sort of incriminating evidence but applies only when the accused is compelled to make a *testimonial* communication that is incriminating. We have, accordingly, declined to extend the protection of the privilege to the giving of blood samples, *Schmerber* [*supra* at 763-64]; to the giving of handwriting exemplars, *Gilbert* v. *California,* 388 U. S. 263, 265-267 [18 L. Ed. 2d 1178, 87 S. Ct. 1951] (1967); voice exemplars, *United States* v. *Wade,* 388 U. S. 218, 222-223 [18 L. Ed. 2d 1149, 87 S. Ct. 1926] (1967); or the donning of a blouse worn by the perpetrator, *Holt* v. *United States,* 218 U. S. 245 [54 L. Ed. 1021, 31 S. Ct. 2] (1910).

(Footnote omitted.) *See also State v. Bauman,* 77 Wn.2d 938, 468 P.2d 684 (1970); *State v. Duckett,* 73 Wn.2d 692, 440 P.2d 485 (1968); *State v. West,* 70 Wn.2d 751, 424 P.2d 1014 (1967); *State v. Craig,* 67 Wn.2d 77, 406 P.2d 599 (1965).

▮ Unlike the activities required of the defendants in the above cited cases, which necessitate the application or consideration of extraneous facts or circumstances such as comparison and identification in order to prove guilt, the act of defendant Dennis in procuring the cocaine from its hiding place and placing it on the table in itself constituted an admission. This act served more graphically than words to convey the incriminating fact that he knew of the presence and precise location within his home of the contraband substance. Officer Jones needed only the drug itself in order to make out a prima facie case of illegal possession. This he might have secured by a search either under the warrant or with defendant's consent.[1] By his response,

---

[1] We see a vast difference between the act of submitting to a search which might unearth incriminating real or physical evidence, *United States v. Thompson,* 475 F.2d 1359 (5th Cir. 1973), but carries with it no admission of guilty knowledge, and an act which says in effect,

however, the defendant has provided the additional ingredient of guilty knowledge; he has all but negated any possible defense of unwitting or unknowing possession. Defendant's response was therefore testimonial in nature and served to incriminate him, and the evidence should have been suppressed.

The State attempts to justify the seizure under the trial court's conclusion that the contraband was in "plain view" once it was placed on the table. The "plain view" doctrine, more commonly applied to justifying seizure of items not particularized in a search warrant, requires not only that the observing officer lawfully be in a position to observe, but that he venture upon the obvious contraband inadvertently. *State v. Murray*, 84 Wn.2d 527, 527 P.2d 1303 (1974); *State v. Campbell*, 13 Wn. App. 722, 537 P.2d 1067 (1975); *State v. Dimmer*, 7 Wn. App. 31, 497 P.2d 613 (1972); *Coolidge v. New Hampshire*, 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022 (1971). Clearly, the doctrine does not apply to render lawful a seizure of evidence procured or brought into view by invasion of an accused's constitutional rights, whether it be a search involving Fourth Amendment considerations, or an interrogation in violation of Fifth Amendment rights. Evidence so produced is fruit of the poison tree and inadmissible against the defendant. *Wong Sun v. United States*, 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963).

Reversed and remanded with instructions to dismiss.

PETRIE, C.J., and PEARSON, J., concur.

---

"Yes, I knew there was a supply of cocaine in my refrigerator." In fact, a willing consent to search could arguably be advantageous at trial to a defendant claiming unwitting or unknowing possession.