# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

        Respondent,

        v.

SANDRA JESSIE HIMMELMAN,

        Appellant.

No. 72024-4-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: September 28, 2015

APPELWICK, J. — Himmelman appeals her conviction for trafficking in stolen property. She asserts that the trial court erred in admitting a statement she made during a custodial interrogation prior to receiving Miranda[1] warnings. She contends that she would not have been convicted had the statement been excluded. We affirm.

## FACTS

In 2012, Sandra Himmelman was remodeling her home. She hired Derryn VanSickle as a contractor on the project. VanSickle used his own tools. With Himmelman's permission, he stored these tools in a storage shed on her property. Himmelman did not store any tools in the shed. In the evenings, VanSickle secured the shed with a padlock he purchased.

On August 23, 2012, VanSickle arrived at Himmelman's home and discovered that the storage shed had been vandalized. Its door was ripped off the hinges, and his tools were gone. VanSickle confronted Himmelman about the missing tools, and she gave him three pawn slips that identified the tools that had been in the shed. She told VanSickle that she had pawned his tools to pay bail for a friend.

---

[1] Miranda v. Arizona, 384 U.S. 436, 479, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

VanSickle called the police to report the theft. Officer Todd Bridgman was dispatched to Himmelman's house to investigate. Officer Bridgman first spoke to VanSickle, who gave him the pawn slips he had received from Himmelman. Officer Bridgman then examined the storage shed and determined that it had been forced open.

At that point, Officer Bridgman knocked on Himmelman's door. Himmelman let him inside her home. The officer informed Himmelman that he was investigating a theft, and he asked her questions. During this conversation, Officer Bridgman stood about an arm's length away from Himmelman. He was accompanied by another officer. Himmelman answered Officer Bridgman's questions. She told him that the tools belonged to her boyfriend, Ryan Ronstadt, which was why she pawned them.

After questioning Himmelman, Officer Bridgman placed her under arrest and read her the Miranda warnings. He took her to the police station, where she gave another statement. Himmelman told the officer that the tools belonged to her friend Derrick, and she had pawned them for him.

Officer Bridgman continued his investigation by contacting the pawnshops. He informed two of the pawnshops that the tools had been stolen. Eventually, the Mill Creek Police Department recovered all of the tools from the pawnshops and returned them to Vansickle.

Himmelman was charged with two counts of trafficking in stolen property in the second degree. She moved to suppress the initial statement she made to Officer Bridgman in her home, claiming that the tools belonged to Ronstadt. The trial court conducted a CrR 3.5 hearing before trial to determine the admissibility of this statement. Officer Bridgman testified about the circumstances surrounding his initial questioning of

2

Himmelman. The trial court concluded that Himmelman's statement was admissible, because she was not in custody until the police arrested her. The court entered written findings of fact and conclusions of law for the CrR 3.5 hearing.[2]

At trial, the State presented the three pawn slips for VanSickle's tools. It also called several witnesses, including VanSickle and Officer Bridgman. Officer Bridgman testified to Himmelman's initial statements as well as the statement she gave at the police station. Two pawn shop employees also testified that Himmelman pawned the tools identified on two of the pawn slips.

---

[2] The trial court made three conclusions of law pertaining to Himmelman's initial statements. It concluded:

4. Court's Conclusions as to Confessions Voluntary and Admissible or Involuntary and Inadmissible With Reasons in Either Case

    a. The defendant was neither in custody nor were her movements restricted to the degree associated with formal arrest until the police actually arrested her. There were no facts to show that the defendant was in custody. There were no facts to show that a reasonable person in a same or similar situation to the defendant would feel that they were in custody.

    . . . .

    d. No threats or promises were made to the defendant at any time.

    e. The initial statements of the defendant and the statements after she was advised of her [Miranda] rights were freely, intelligently, and voluntarily made. As a result the statements are admissible pursuant to CrR 3.5.

Himmelman assigns error to conclusions of law 4(a) and 4(e) so far as they are considered findings of fact. But, Himmelman has not supported this argument by reference to the record or citation to authority. We decline to consider this argument. RAP 10.3(a)(6); Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (declining to consider arguments unsupported by reference to the record or citation to authority).

3

The jury found Himmelman guilty of two counts of trafficking in stolen property in the second degree. Himmelman appeals.

DISCUSSION

To convict Himmelman of trafficking in stolen property in the second degree, the State had to prove beyond a reasonable doubt that she recklessly trafficked in stolen property in the state of Washington. RCW 9A.82.055. Himmelman argues that the State proved the "recklessly" element of the offense by juxtaposing her initial statement to Officer Bridgman that the tools belonged to Ronstadt with her later statement that the tools belonged to Derrick. But, she claims that she was subject to a custodial interrogation when she stated that the tools belonged to Ronstadt, and therefore she was entitled to Miranda warnings. Because she did not receive the Miranda warnings, she contends that the trial court erred in admitting this statement. Himmelman further asserts that the admission of this statement at trial was not harmless error, as the State used it to establish that she acted recklessly.

When a state agent subjects a suspect to custodial interrogation, Miranda warnings must be given. 384 U.S. at 467-68; State v. Heritage, 152 Wn.2d 210, 214, 95 P.3d 345 (2004). If police conduct a custodial interrogation without Miranda warnings, statements made by the suspect during the interrogation must be suppressed. Miranda, 384 U.S. at 479. Whether a person is in "custody" is an objective inquiry: considering all the circumstances, would a reasonable person feel that her freedom was curtailed to a degree associated with formal arrest? Heritage, 152 Wn.2d at 218. The defendant must show some objective facts indicating her freedom of movement was restricted or curtailed. State v. Lorenz, 152 Wn.2d 22, 36-37, 93 P.3d 133 (2004). We review a trial

court's custodial determination de novo. Id. at 36. Statements admitted in violation of Miranda are subject to harmless error analysis. State v. Reuben, 62 Wn. App. 620, 626, 814 P.2d 1177 (1991).

Himmelman argues the circumstances surrounding her initial statements to Officer Bridgman illustrate that she was in custody. She claims that Orozco v. Texas, 394 U.S. 324, 89 S. Ct. 1095, 22 L. Ed. 2d 311 (1969) and State v. Dennis, 16 Wn. App. 417, 558 P.2d 297 (1976) are controlling. In both cases, the suspects were found to be subject to custodial interrogation even though they were in their homes during the time of questioning. Orozco, 394 U.S. at 326-27; Dennis, 16 Wn. App. at 421-22. But, those cases presented objective facts indicating that the suspects' freedom of movement was restricted.

In Orozco, four police officers were let into the suspect's home by another person in the early hours of the morning. 394 U.S. at 325. Officers entered the suspect's bedroom and began questioning him. Id. One officer testified that at the time the suspect was questioned, he was under arrest and not free to leave. Id. at 327. In Dennis, one of the two suspects let the officer into their shared apartment. 16 Wn. App. at 419. However, the officer refused to allow the suspects to move freely within their home and implied that the suspects could either reveal the contraband or he would find it pursuant to a search warrant. Id. at 422. In both of these cases, the officers created an environment in which a reasonable person would have felt that his or her freedom was curtailed to a degree associated with formal arrest. Orozco, 394 U.S. at 327; Dennis, 16 Wn. App. at 422.

But, Officer Bridgman did not create such an environment. The undisputed facts here indicate that a reasonable person in Himmelman's position would not have felt that

5

his or her freedom was curtailed to a degree associated with formal arrest. Officer Bridgman entered Himmelman's home peacefully. He knocked on her door and waited for her to let him inside. He explained about the investigation and asked her questions. Officer Bridgman never demanded that Himmelman respond to these questions. He never stopped her from moving to another part of her home. He did not handcuff her or otherwise restrict her freedom. He did not use force or threaten Himmelman. He did not tell her she was under arrest, nor did he testify that he considered Himmelman to be under arrest at that point. Rather, Officer Bridgman placed Himmelman under arrest only after she made incriminating statements. That Officer Bridgman was accompanied by another officer, they were both uniformed, and they considered her a suspect do not alone result in Himmelman being in custody. See Oregon v. Mathiason, 429 U.S. 492, 495, 97 S. Ct. 711, 50 L. Ed. 2d 714 (1977) (noting that while there will always be coercive aspects when police officers interview a suspect, that alone does not trigger Miranda). A reasonable person in this situation would believe that she was free to ask the officer to leave or refuse to answer his questions. Therefore, we hold that Himmelman was not in custody for purposes of Miranda, and the trial court did not err by admitting her statements.

Moreover, even if Himmelman's statements were admitted in error, we conclude that the error was harmless. A constitutional error is harmless if we are convinced beyond a reasonable doubt that any reasonable jury would have reached the same result absent the error. State v. Guloy, 104 Wn.2d 412, 425, 705 P.2d 1182 (1985). We look at only the untainted evidence to determine if the evidence is so overwhelming that it necessarily leads to a finding of guilt. Id. at 426.

6

Himmelman contends that the State used her statement to Officer Bridgman that the tools belonged to Ronstadt to establish recklessness, an element of the charged offense. To convict Himmelman of trafficking in stolen property in the second degree, the State had to prove that she <u>recklessly</u> trafficked in stolen property. RCW 9A.82.055. A person acts recklessly "when he or she knows of and disregards a substantial risk that a wrongful act may occur and his or her disregard of such substantial risk is a gross deviation from conduct that a reasonable person would exercise in the same situation." RCW 9A.08.010. Himmelman asserts that the State established recklessness by juxtaposing her first statement to Officer Bridgman, where she said the tools were Ronstadt's, with her statement at the police station, where she said they belonged to Derrick.

But, even without Himmelman's statement claiming the tools belonged to Ronstadt, the evidence establishes that she acted recklessly. VanSickle testified that he arrived at Himmelman's home to find his padlock on the shed destroyed and his tools missing. He further testified that he received pawn slips identifying his stolen tools from Himmelman herself, who told him she needed the money to pay bail for her friend. The pawn slips were also admitted into evidence—pawn slips from three different pawn shops. Employees from two of these pawn shops testified that Himmelman pawned the tools.

Additionally, the jury heard Officer Bridgman's testimony regarding Himmelman's statements at the police station. Officer Bridgman testified that Himmelman told him that the tools belonged to someone named Derrick. She had agreed to pawn the tools for Derrick, because he was unable to do so himself. Himmelman said that she had known

Derrick for around a year, but did not know his last name or phone number, because it is safer for her not to know much information about her friends.

Himmelman argues without citation to authority that the two unchallenged statements are not enough, and the third challenged statement was necessary for the State to prove she acted recklessly. We disagree. Even excluding the statement she claims i tainted, any reasonable jury could conclude beyond a reasonable doubt that Himmelman was guilty of recklessly trafficking in stolen property. Therefore, even if the statement was erroneously admitted, the error is harmless.

We affirm.

_Appelwick, J._

WE CONCUR:

_Trickey, J_       _Becker, J._