# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, CITY OF VANCOUVER, | No.  48880-9-II |
| Respondent, | |
| v. | |
| HAMID ALI KHAN, | UNPUBLISHED OPINION |
| Petitioner. | |

WORSWICK, P.J. — Hamid Khan appeals from his fourth degree assault conviction, asserting that (1) the trial court erred by failing to suppress statements he made to a police officer during what he contends was a custodial interrogation, and (2) the prosecutor committed misconduct during closing argument by expressing personal opinions regarding the strength of evidence and credibility of witnesses.  We affirm.

## FACTS

On March 11, 2014, the City of Vancouver charged Khan with fourth degree assault. Before trial, Khan moved to suppress statements he had made to a police officer.  On May 23, 2014, the trial court held a CrRLJ 3.5 suppression hearing to address the admissibility of Khan's statements.

At the suppression hearing, Vancouver Police Deputy Gregory Raquer testified that he and Corporal Stuart Hemstock went to the Khan residence on March 10, 2014 in response to a

hung-up 911 call. Raquer stated that he and Hemstock were wearing their police uniforms when they went to the residence. Khan's wife, Sara Khan, answered the door and told the officers that Khan was not at home; Khan came down the stairs a short time later and made contact with the officers. While Hemstock was speaking with Sara, Raquer spoke separately with Khan in a sitting room that was immediately adjacent to the entry of the home. The sitting room had French doors with glass panes and curtains; the doors were closed during Raquer's conversation with Khan.

Raquer further testified at the suppression hearing that, prior to engaging Khan in conversation, he did not (1) handcuff Khan, (2) tell Khan that he was under arrest, (3) tell Khan that he could not leave, (4) tell Khan that he was free to leave, (5) tell Khan that he had to speak with him, (6) make any threats or promises, or (7) advise Khan of his *Miranda*[1] rights. Khan told Raquer that he and his wife were arguing about possible infidelity in their marriage, and that he had slapped his wife's face.

At some point during their conversation, Raquer asked Khan for identification. Raquer escorted Khan as he went upstairs to retrieve his identification. Raquer could not remember whether he asked for Khan's identification before or after Khan had admitted to slapping his wife's face. Raquer also could not remember whether he gave Khan back his identification.

Khan testified at the suppression hearing that he did not feel as though he could leave the room when speaking with Raquer because Raquer was standing by the front of the door. Khan testified that he was not handcuffed and that Raquer did not tell him that he was free to leave the room. Khan also testified that Raquer had followed him when retrieving his identification. The

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

trial court ruled that Khan's statements to Raquer were admissible, and the matter proceeded to jury trial.

The prosecutor made the following statements during closing argument, to which Khan did not object:

> And I think when you look at that evidence you'll see that the corroboration is that the defendant committed assault in the 4th degree against Mrs. Khan so let's talk about that evidence.
>
> . . . .
>
> As Judge Zimmerman indicated you will get a copy of the law that he just read to you. I want to focus on a few of those [jury instructions] that I think are going to be key to your decision.
>
> . . . .
>
> A touching or striking is offensive if it would offend an ordinary person who is not unduly sensitive. Well, if you were—, I submit to you if you were to walk up to somebody and slap them they would be offended by that, a reasonable person would be offended by that.
>
> . . . .
>
> To convict the defendant, I must prove beyond a reasonable doubt and you must all agree as to which slap is the assault so you don't have to agree that all 6 of the slaps or all 5 of the slaps, you just have to agree that one slap happened and that that's the assault, it's a little bit of a—, it's just an instruction that has to be given because in this particular case we talk—, we've heard evidence of 6—, 6 individual slaps.. . . This is—, this is an unfortunate situation. I don't think anybody listening to the evidence today can—, can—, can wish that this happened. Tempers were—, sleep was short, tempers were high, there is infidelity in the past which is unfortunate. But sympathy and emotion cannot rule your decision-making here, that was in instruction number 1. . . . The evidence is corroborated and clear, the defendant slapped her or hit her however you want to say it, 5 to 6 times, applied to the law that is an assault and I ask you to come back with a guilty verdict on both the assault and I ask you come back finding that a domestic relationship existed between the defendant and his wife. Thank you.

Clerk's Papers (CP) at 293, 297-99. The jury returned a verdict finding Khan guilty of fourth degree assault. The jury also returned a special verdict finding that Khan and the victim were members of the same family or household.

3

Khan appealed his conviction to the superior court. The superior court affirmed and entered written findings of fact and conclusions of law. We thereafter accepted discretionary review.

## ANALYSIS

### I. STANDARD OF REVIEW

We review a limited jurisdiction court's decision according to the standards in RALJ 9.1. *City of Seattle v. May*, 151 Wn. App. 694, 697, 213 P.3d 945 (2009), *aff'd*, 171 Wn.2d 847, 256 P.3d 1161 (2011). Pursuant to RALJ 9.1(a), we "review the decision of the court of limited jurisdiction to determine whether that court has committed any errors of law." *May*, 151 Wn. App. at 697. We determine whether the limited jurisdiction court committed legal error based on the record before it. *City of Bellevue v. Jacke*, 96 Wn. App. 209, 211, 978 P.2d 1116 (1999). Our review for errors of law is de novo. *May*, 151 Wn. App. at 697.

### II. ADMISSIBILITY OF KHAN'S STATEMENT

Khan first contends that the district court committed legal error by concluding that he was not in custody for *Miranda* purposes when he made his statements to Deputy Raquer. We disagree.

The Fifth Amendment of the United States Constitution protects a criminal defendant against self-incrimination. "*Miranda* warnings were developed to protect a defendant's constitutional right not to make incriminating confessions or admissions to police while in the coercive environment of police custody." *State v. Heritage*, 152 Wn.2d 210, 214, 95 P.3d 345 (2004). Absent *Miranda* warnings, we presume that a defendant's statements made during a custodial interrogation were involuntary. *Heritage*, 152 Wn.2d at 214. Thus, when determining

4

the admissibility of a defendant's statements, a trial court must first ascertain whether the defendant was in custody for purposes of *Miranda*. *See State v. Rosas-Miranda*, 176 Wn. App. 773, 779, 309 P.3d 728 (2013).

"'Custody' for *Miranda* purposes is narrowly circumscribed and requires 'formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.'" *State v. Post*, 118 Wn.2d 596, 606, 826 P.2d 172, 837 P.2d 599 (1992) (internal quotation marks omitted) (quoting *Minnesota v. Murphy*, 465 U.S. 420, 430, 104 S. Ct. 1136, 79 L. Ed. 2d 409 (1984)). When determining whether a suspect was in custody for purposes of *Miranda*, courts examine the totality of the circumstances. *Rosas-Miranda*, 176 Wn. App. at 779 (citing *United States v. Craighead*, 539 F.3d 1073, 1082 (9th Cir. 2008)). We review a trial court's custodial determination de novo. *State v. Lorenz*, 152 Wn.2d 22, 36, 93 P.3d 133 (2004).

A suspect may be subject to custodial interrogation within his or her own home. *Rosas-Miranda*, 176 Wn. App. at 779 (citing *Orozco v. Texas*, 394 U.S. 324, 326-27, 89 S. Ct. 1095, 22 L. Ed. 2d 311 (1969); *State v. Dennis*, 16 Wn. App. 417, 421, 558 P.2d 297 (1976)). In *Craighead*, the Ninth Circuit concluded that the following factors are relevant when determining whether a defendant had been subjected to a custodial interrogation within his or her home:

> (1) the number of law enforcement personnel and whether they were armed; (2) whether the suspect was at any point restrained, either by physical force or by threats; (3) whether the suspect was isolated from others; and (4) whether the suspect was informed that he was free to leave or terminate the interview, and the context in which any such statements were made.

539 F.3d at 1084. We applied these *Craighead* factors to our custody analysis in *Rosas-Miranda*, and do so again here. 176 Wn. App. at 783-86.

The first *Craighead* factor concerns the number of law enforcement officers present in the home and whether they were armed. 539 F.3d at 1084. The first *Craighead* factor weighs in favor of concluding that Khan was not in custody. Here, two officers in full uniform went to the Khan residence, and only one officer entered the sitting room to speak with Khan. This stands in contrast with *Craighead*, where eight officers from multiple law enforcement agencies went to the suspect's home to execute a search warrant, and with *Rosas-Miranda*, where eight or nine officers searched the suspect's home. 176 Wn. App. at 783-84 (citing *Craighead*, 539 F.3d at 1078, 1084).

The facts here regarding the level of police presence in Khan's home is also distinguishable from *State v. Dennis*, 16 Wn. App. 417, 418, 421-22, 558 P.2d 297 (1976), in which we held that a suspect was subjected to custodial interrogation in his home where only two officers entered the home. In *Dennis*, an officer communicated to the suspect that he believed the suspect was involved in criminal activity and insisted that the suspect produce evidence of his criminal activity because his partner was securing a search warrant and would inevitably find the evidence. 16 Wn. App. at 422. Unlike in *Dennis*, here there was no evidence that Raquer made any accusatory statements to Khan suggesting that Khan was being subjected to a criminal investigation and conveying to Khan that "any attempt to leave would probably result in immediate physical restraint or custody." 16 Wn. App. at 422.

The second *Craighead* factor concerns whether the suspect was restrained by physical force or threats. 539 F.3d at 1084. Here, the second *Craighead* factor clearly weighs in favor of concluding that Khan was not in custody as the uncontested evidence at the CrRLJ 3.5 hearing

showed that Raquer neither threatened nor physically restrained Khan prior to Khan making his incriminatory statements.

The third *Craighead* factor concerns whether a suspect was isolated from others during the interrogation. 539 F.3d at 1084. Here, the third *Craighead* factor neither weighs in favor nor weighs against the conclusion that Khan was in custody. Although Khan was separated from his wife when speaking to Raquer, the discussion took place in a sitting room immediately adjacent to the front entrance where Hemstock was speaking with Khan's wife. The door to the sitting room had windows and, although the record does not specifically reveal whether the curtains to the windows were drawn, Raquer testified that he could see Hemstock speaking with Khan's wife from the sitting room with the doors closed. This stands in contrast with *Craighead*, wherein two officers directed the suspect to a storage room in the back of suspect's home to be questioned, and where those officers did not permit an Air Force sergeant to accompany the suspect despite being brought to the home to provide the suspect with emotional support. 539 F.3d at 1078, 1086-87. Khan's mere separation from his wife to a sitting room in his home did not rise to the level of isolation identified in *Craighead* as creating a police-dominated atmosphere. 539 F.3d at 1087.

The final *Craighead* factor concerns "whether the suspect was informed that he was free to leave or terminate the interview, and the context in which any such statements were made." 539 F.3d at 1084. This factor weighs slightly in favor of concluding that Khan was in custody. Although Khan was not informed that he was free to leave or terminate the interview, he was also not informed to the contrary. Here, the record is ambiguous as to whether Raquer had obtained Khan's identification before Khan made his incriminating statement, or whether Raquer

7

had returned the identification to Khan. If we were to assume that Raquer had obtained and failed to return Khan's identification prior to Khan making his statement, this factor would weigh more heavily in favor of concluding that Khan was in custody. Nonetheless, even with more weight applied to the final *Craighead* factor, we cannot conclude that Khan had been subjected to a custodial interrogation when examining the totality of the circumstances and applying all the *Craighead* factors together. Accordingly, we hold that the trial court did not commit legal error when concluding that Khan was not in custody for purposes of *Miranda* and ruling that his statements were admissible at trial.

## III. PROSECUTORIAL MISCONDUCT

Next, Khan contends that the prosecutor committed misconduct during closing argument by expressing personal opinions regarding the strength of evidence and witness credibility. Again, we disagree.

To prevail on his prosecutorial misconduct claim, Khan must demonstrate that in the context of the entire record and trial circumstances the prosecutor's conduct was both improper and prejudicial. *State v. Thorgerson*, 172 Wn.2d 438, 442, 258 P.3d 43 (2011). To demonstrate prejudice, Khan must show a substantial likelihood that the improper conduct affected the verdict. *Thorgerson*, 172 Wn.2d at 442-43. Because Khan did not object to the alleged misconduct at trial, he is deemed to have waived the issue unless he can show that any misconduct was so flagrant and ill-intentioned that any resulting prejudice could not have been cured by a jury instruction. *Thorgerson*, 172 Wn.2d at 443.

Here, Khan fails to identify in the argument section of his brief any specific statement in which the prosecutor expressed a personal opinion. It appears that Khan is challenging

statements by the prosecutor identified only in the facts section of Khan's brief.[2]  But Khan

provides no argument explaining how these statements expressed a personal opinion, stating

only:

> [T]he prosecutor in this case also unmistakably expressed his personal opinion of the evidence and Khan's guilt during closing argument.  Over and over he told the jury what he believed to be true and which witnesses to believe.

Br. of Appellant at 13.  This vague conclusory contention misrepresents the record.  Reviewing

the statements identified in the fact section of Khan's brief, it is clear that none impermissibly

express a personal opinion of guilt or witness credibility.  Four of the six statements identified

clearly refer to the law as set forth in the jury instructions and do not warrant further discussion.

The two remaining statements are:

> And I think when you look at that evidence you'll see that the corroboration is that the defendant committed assault in the 4th degree against Mrs. Khan so let's talk about that evidence. . . . The evidence is corroborated and clear, the defendant slapped her or hit her however you want to say it, 5 to 6 times, applied to the law that is an assault and I ask you to come back with a guilty verdict on both the assault and I ask you come back finding that a domestic relationship existed between the defendant and his wife.  Thank you.

CP at 293, 299.  Regarding the first statement, the prosecutor is unmistakably arguing that the

evidence supports the jury finding Khan guilty of the charged crime and does not express the

prosecutor's personal opinion as to Khan's guilt.  The second statement similarly refers to the

evidence at trial and not the prosecutor's personal opinion of guilt or veracity.  As such, Khan

fails to demonstrate improper conduct or resulting prejudice, let alone flagrant and ill-intentioned

misconduct for which a jury instruction could not cure any resulting prejudice.  Accordingly,

Khan's prosecutorial misconduct claim fails, and we affirm his fourth degree assault conviction.

---

[2] These statements have been quoted toward the end of the fact section of this opinion.

No. 48880-9-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, P.J.

We concur:

_____
Lee, J.

_____
Sutton, J.