[No. C. D. 1689. *En Banc.* December 31, 1940.]

*In the Matter of the Proceedings for the Disbarment of*
PIERCE L. JETT.[1]

[1]Reported in 108 P. (2d) 635.

*S. M. Brackett,* for the board of governors.

*Henry Clay Agnew,* for respondent.

MAIN, J.—This is a disbarment proceeding. Pierce L. Jett was duly admitted, and qualified to practice, as an attorney at law in all of the courts of this state in September, 1931, which license has not been revoked, and is a resident of the city of Seattle.

On or about August 9, 1939, a complaint was filed with the board of governors of the state bar association, which contained seven charges of professional misconduct by the respondent. Subsequently, a supplemental complaint was presented, which contained another charge. A hearing was had before a trial committee, with the result that that committee found against the respondent on two of the charges in the original complaint, and also against him on the charge in the supplemental complaint. As to the other charges in the original complaint, the committee found in his favor. This committee recommended disbarment, and that recommendation was approved by the board of governors.

The two charges on which the committee found against the respondent in the original complaint were the second and third, and we will give little space to them, because the graver charge arose with reference to the matter in the supplemental complaint. As to the second charge, the committee found that, if the respondent had not actually attempted to deceive the court and defraud the owner of property of his

rights, there was such gross negligence on the part of the respondent as to require strict disciplinary action. As to the third charge, the committee found that an allegation in a complaint which the respondent had drawn in an action in the superior court was false in fact, and was either known to the respondent to be false or he might have ascertained it to be false upon slight investigation.

We will now take up the charge in the supplemental complaint, which was that the respondent had been guilty of professional misconduct in the manner in which he had handled a trust fund. The facts, as found by the committee with reference to this charge, will be here summarized:

March 3, 1939, F. A. Davis and A. N. Lewis employed respondent as an attorney to procure on their behalf the issuance of a liquor license from the Washington state liquor control board. The respondent advised them that they should form a corporation and make application on behalf of it. His fee was to be $150, and the expense of the incorporation, $70, which amounts were paid, and the respondent thereupon organized the corporation under name of Davis & Lewis Company, Inc. Davis was made president, and Lewis, secretary. The application was made for the issuance of a liquor license, accompanied by a certified check, payable to the Washington state liquor control board, in the sum of $262.50.

Thereafter, and on the 21st day of April, 1939, the application was denied, and the fees tendered, in the sum of $262.50, were returned to the respondent. The check was made payable to Davis & Lewis Company, Inc., in that amount. The check was retained by the respondent for some time, with the approval of Davis and Lewis, in the hope that a liquor permit might be obtained.

Subsequently, and on the 21st day of June, 1939, the respondent cashed the check, endorsing the same: "Davis & Lewis Company, Inc., by P. L. Jett, Sec." The respondent had no authority to cash the check, nor was he secretary of the corporation. He informed the Davis & Lewis Company that the $262.50 had been deposited by him in his mother's bank account in Spokane, and that he would send for the money and refund the same to them within a few days. Davis and Lewis had made a demand for the money. Subsequently, a certified check, signed by his mother, was tendered to Davis and Lewis, and refused, for reasons not here material, and a little later, the check was accepted. At the hearing before the trial committee, the respondent testified with reference to this matter:

"Q. Why did you cash that check? A. Because I didn't want to be responsible for it any longer. I didn't cash it, I deposited it. Q. (By Mr. Brown) Where did you deposit it? A. The First National Bank. Q. Whose account? A. My mother's."

With reference to the cashing of the check, he testified, as follows:

"Q. Were any questions asked of you as to your authority to endorse the check? A. I merely handed the check to Mr. Woodward and he cashed it. Q. Did you get a draft on that deposit? A. I received cash from the window and then purchased a draft. Q. They gave you the cash on your endorsement? A. Yes. Q. In whose favor was the draft? A. It ran to my mother."

The committee desiring to see the respondent's mother's bank book and it being impossible to locate his mother that afternoon, and as the hearing was nearing an end, it was stipulated by the parties that one member of the committee, who was an attorney for the bank, might make an inquiry at the bank and report the result of his investigation. This was done,

and the report was to the effect that the bank had no record of the transaction.

In accordance with a stipulation made, it was agreed that the affidavit of the respondent's mother might be obtained and placed in the record, and this was done. In this affidavit, the mother stated that, on or about the 21st day of June, 1939, her son turned over to her, in cash, the sum of approximately $262, stating that it was the money of a client and was returnable on demand, and that she kept the money in her possession, and later, on or about August 19th, when demand was made by Davis and Lewis, withdrew from her savings account and her general bank account, $262.50.

With reference to the charge in the supplemental complaint and the testimony of respondent as to the manner in which he cashed the check, which the committee deemed to be false, the committee made this recommendation:

"The foregoing facts have forced your Trial Committee to the conclusion that respondent Jett was grossly incompetent and negligent if not in fact venal in the transactions referred to in the second and third causes of action, and that in the transactions referred to in the supplemental complaint, he dealt with the trust funds of his clients in a careless and wholly unwarranted manner and in defending against said supplemental complaint, respondent Jett was guilty of perjury."

If the respondent was guilty of perjury, as the committee found and the board of governors approved, it would hardly be contended that this did not warrant disbarment. Perjury, of course, is the deliberate testifying to something as true which is not, in fact, true. It may be observed, in passing, that the respondent did not at any time after the affidavit of his mother was obtained ask for an opportunity to explain or change his testimony. The respondent,

however, says that, inasmuch as this testimony was given upon the hearing, the committee had no right to make a recommendation with reference thereto; and that, before they could consider that testimony as a basis for disbarment, it was necessary that a complaint be filed against him and a hearing had thereon. The answer to this is that the proceeding is a civil, and not a criminal, one. The testimony went in without objection, and we see no reason why the practice in a civil action of considering a complaint amended to conform to the testimony when such testimony has gone into the record without objection, should not obtain in this proceeding.

While the facts presented in *In re Beakley,* recently decided in *ante* p. 410, 107 P. (2d) 1097, and the facts in this case are not the same, there is some analogy between them. In that case, one of the charges against the attorney was to the effect that, as attorney for the city of Bremerton, he had collected the sum of $450 from the city upon a false representation. The attorney objected to the taking of any evidence on that charge, upon the ground that the action in which he was charged with having so testified was still pending on appeal in this court. The trial committee allowed the objection, and ordered that the charge be held in abeyance until the appeal should have been heard and the decision made. With reference to this charge in the opinion in the *Beakley* case, it was stated:

"A decision has been rendered, and it would be a vain and useless thing to send this charge back to the trial committee to find the facts for our information; for we have judicially found them in ruling upon the appeal. They fully substantiate the charge. *Beakley v. Bremerton,* 5 Wn. (2d) 670, 105 P. (2d) 40."

Further in the opinion and referring to the matter again, it was said:

"Since the trial committee made its recommendation and since the board of governors approved it, it has been judicially determined that, during the same period covered by the committee's report, the respondent was guilty of additional derelictions of an even more serious character, namely, that he not only defrauded a client, the city of Bremerton, but also testified falsely in open court in an attempt to retain the proceeds of the fraud."

From what was said in the opinion in that case, it reasonably follows that the trial committee, in the present case, had the right to consider the false testimony which the respondent gave upon the hearing as a basis for disbarment.

It is ordered that, upon the expiration of thirty days after the filing of this opinion, the respondent's name be stricken from the roll of attorneys, and that he from that date be disbarred from practicing law in this state.

ALL CONCUR.