**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

This opinion was filed for record

at _8:00 am_ on _April 13, 2017_

~~Susan L. Carlson~~
SUSAN L. CARLSON
SUPREME COURT CLERK

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE APR 1 3 2017
_____
for CHIEF JUSTICE

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | NO. 91577-6 |
| Respondent, | |
| v. | EN BANC |
| DAVID EARL WOODLYN, | |
| Petitioner. | Filed APR 1 3 2017 |

STEPHENS, J.—In the summer of 2011, David Earl Woodlyn cashed a series of blank checks written by Dora Kjellerson, an elderly woman suffering from dementia. In total, Woodlyn withdrew $1,865 from Kjellerson's account. The State charged Woodlyn with theft in the second degree, an alternative means crime. The jury's "to convict" instruction required the jury to unanimously agree on Woodlyn's guilt—but not on *how* he committed the crime. Clerk's Papers (CP) at 72. In other words, the jury could return a guilty verdict even if individual jurors disagreed whether Woodlyn committed theft because he (1) "wrongfully obtained"

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Kjellerson's property or instead (2) "obtained control" over Kjellerson's property "by color or aid of deception." *Id*. The jury returned a general verdict of guilty.

Woodlyn appealed, arguing the general verdict violated his right to jury unanimity under article I, section 21 of the state constitution insofar as the evidence was insufficient to support conviction under the "wrongfully obtained" alternative. The Court of Appeals agreed that the evidence of this means was insufficient, but nonetheless affirmed, holding that any error was harmless. The court reasoned that the absence of evidence of the theft by taking alternative reasonably showed that the jury's verdict rested on the theft by deception alternative. We reject the Court of Appeals reasoning. A determination on appeal that the State failed to support one or more alternative means does not establish that the jury relied unanimously on another, supported alternative.

We nevertheless affirm the Court of Appeals in result because we conclude the evidence before the jury was sufficient to support both alternative means of second degree theft. We affirm on this basis.

FACTS AND PROCEDURAL HISTORY

Woodlyn was charged, tried, and convicted of theft in the second degree. The State alleged that Woodlyn wrote and cashed checks totaling $1,865 from the account of Kjellerson. CP at 4-5. Woodlyn acknowledged cashing the checks but denied

-2-

stealing from Kjellerson, maintaining that he cashed the checks on her behalf, gave her some of the cash, and kept the rest as payment for cutting Kjellerson's lawn. The following facts were offered at trial:

In the summer of 2011, Woodlyn was unemployed save for occasional lawn care work. Woodlyn first met Kjellerson when he knocked on her door and offered to cut her lawn for $60. Kjellerson was elderly, lived alone, and was later found to be suffering from "moderate to severe dementia." Verbatim Report of Proceeding (VRP) (Nov. 13, 2013) at 538. According to Woodlyn, he cut Kjellerson's grass and performed other yard work three to five times that summer. Woodlyn testified that each time, Kjellerson paid him by signing an otherwise blank check, leaving Woodlyn to write in the payee and amount.

On August 27, 2011, Woodlyn accompanied Kjellerson to her bank. Kjellerson indicated that Woodlyn needed money to cut the grass, but did not appear to know how much. When the teller asked Woodlyn how much Kjellerson needed to withdraw, Woodlyn responded by asking how much she had. Alarmed, the teller refused to dispense any funds, and a bank employee called the police. Woodlyn left the bank alone, and Kjellerson was accompanied home by the responding officer. Noting that the grass in Kjellerson's yard was roughly one foot high and "kind of over grown," the officer asked Kjellerson how much money she paid for yard work. VRP (Nov. 18,

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

2013) at 688-89. Kjellerson estimated that she paid Woodlyn $60 during the month of August. According to the bank, Woodlyn in fact cashed seven checks from Kjellerson's account between July 25, 2011 and August 12, 2011. The checks ranged from $60 to $440, totaling $1,865. *Id.* at 746-51.

The State charged Woodlyn with theft in the second degree. The "to convict" instruction to the jury set out two alternative means of committing the crime: (1) that Woodlyn "wrongfully obtained" Kjellerson's property or (2) that Woodlyn "obtained control" over Kjellerson's property "by color or aid of deception." CP at 72. The trial court instructed the jurors that while they must agree unanimously as to Woodlyn's guilt or innocence, they could find Woodlyn guilty without agreeing unanimously as to the means. *See* 11A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 70.06 (4th ed. 2016); CP at 72-73. The jury returned a general verdict of guilty. CP at 87.

Woodlyn appealed, claiming a violation of his right to a unanimous verdict because the State failed to present sufficient evidence to support the theft by taking alternative. *State v. Woodlyn*, No. 71311-6-I, slip op. at 5 (Wash. Ct. App. Mar. 9, 2015) (unpublished), http://www.courts.wa.gov/opinions/pdf/713116.pdf. The State conceded that "'[n]o evidence of theft by taking was presented to the jury,'" but argued that the absence of evidence of theft by taking rendered any error harmless. *Id.* at 6-7

-4-

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Woodlyn (David Earl)*, 91577-6

(alteration in original). On this basis, the Court of Appeals affirmed, reasoning that because "deception was the only basis for the jury to have concluded that Woodlyn's acceptance of Kjellerson's checks . . . was 'wrongful,'" the jury must have relied unanimously on the theft by deception alternative. *Id.* at 10. This court granted Woodlyn's petition for review. *State v. Woodlyn*, 185 Wn.2d 1024, 369 P.3d 502 (2016). The State then withdrew its concession. The State now argues that sufficient evidence supports both alternative means of committing theft.

ISSUES

(1)  When a trial court erroneously instructs the jury it need not unanimously agree on the means by which the defendant committed a crime, is this error harmless based on a determination that no evidence supported one of the alternative means?

(2)  Was there sufficient evidence at trial to support Woodlyn's second degree theft conviction based on either alternative means?

ANALYSIS

Our precedent addressing alternative means crimes requires unanimity as to means only when a general verdict raises due process concerns, i.e., when one or more alternatives presented to the jury are not supported by sufficient evidence. *See State v. Arndt*, 87 Wn.2d 374, 377-378, 553 P.2d 1328 (1976); *State v. Franco*, 96 Wn.2d 816, 823, 639 P.2d 1320 (1982), *distinguished on other grounds by State v. Sandholm*, 184

-5-

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Wn.2d 726, 736, 364 P.3d 87 (2015); *State v. Whitney*, 108 Wn.2d 506, 511, 739 P.2d 1150 (1987); *State v. Ortega-Martinez*, 124 Wn.2d 702, 707-08, 881 P.2d 231 (1994); *State v. Owens*, 180 Wn.2d 90, 95, 323 P.3d 1030 (2014); *State v. Wright*, 165 Wn.2d 783, 802, 203 P.3d 1027 (2009). This principle is sufficient to resolve the case. Although the Court of Appeals found that the State had not proved the theft by taking alternative, *Woodlyn*, slip op. at 10, a review of the record shows sufficient evidence supports this means of committing second degree theft. Because sufficient evidence supported each alternative means, we uphold the jury's general verdict. In doing so, however, we reject the harmless error approach adopted by the Court of Appeals. When one alternative means of committing a crime has evidentiary support and another does not, courts may not assume the jury relied unanimously on the supported means.

A.    Jury Unanimity in Alternate Means Cases in Washington

The Washington Constitution guarantees criminal defendants the right to a unanimous jury verdict. WASH. CONST. art. I, § 21; *see Ortega-Martinez*, 124 Wn.2d at 707. However, when a crime may be committed in different ways (i.e., via alternative means), the exact requirements of this rule are not always clear. In enacting criminal statutes, the legislature may articulate a set of prohibited behaviors as (1) a list of distinct offenses or (2) a single offense with one or more alternative means. *See, e.g., State v. Peterson*, 168 Wn.2d 763, 769, 230 P.3d 588 (2010). The criminal act charged in this

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

case, theft in the second degree, is an alternative means crime. *See, e.g., State v. Linehan*, 147 Wn.2d 638, 644-45, 56 P.3d 542 (2002) (noting that theft by wrongful obtainment and theft by deception are alternate means).

Courts analyzing unanimity in alternative means cases are confronted with competing concerns. The purpose of unanimity is to secure the integrity and reliability of jury deliberations and verdicts. *See, e.g., Richardson v. United States*, 526 U.S. 813, 819, 119 S. Ct. 1707, 143 L. Ed. 2d 985 (1999) (discussing unanimity in the federal Sixth Amendment context). Asking the jury for nothing beyond a general verdict—a simple up or down vote on guilt or innocence—may mask "wide disagreement among the jurors about just what the defendant did, or did not, do." *Id.* at 819.[1] On the other hand, if a jury must specifically articulate its unanimous agreement as to each element, subelement, and relevant fact before it can convict, a defendant might go free even though the jury unanimously agrees that he or she behaved criminally.

In this case, Woodlyn asserts that the "[state] constitutional right to jury unanimity applies to alternative means of committing the crime." Suppl. Br. of Pet'r at 5. Our precedent does not support so broad a proposition.

---

[1] The United States Supreme Court cautioned in *Richardson* that "jurors, unless required to focus upon specific factual detail, will fail to do so, simply concluding from testimony, say, of bad reputation, that where there is smoke there must be fire." *Richardson*, 526 U.S. at 819.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

We have never recognized a categorical right to express unanimity (i.e., unanimity as to means) in alternative means convictions. *See Arndt*, 87 Wn.2d at 377-78; *Franco*, 96 Wn.2d at 823; *Whitney*, 108 Wn.2d at 511. Rather, there are particular situations when express unanimity is required, specifically when at least one means lacks sufficient evidentiary support. *See, e.g., Owens*, 180 Wn.2d at 95. Washington cases have adopted an analysis that turns on the sufficiency of evidence as a due process concern: if the jury is instructed on one or more alternative means that is not supported by sufficient evidence, a "particularized expression" of jury unanimity as to the supported means is required. *Id.* The purpose of this requirement is to ensure that when a verdict might be based on more than one alternative, the verdict is adequately supported.[2] *See Wright*, 165 Wn.2d at 803 n.12 (requiring reversal if it is "impossible *to rule out the possibility* the jury relied on a charge unsupported by sufficient evidence").

When there is sufficient evidence to support each alternative means, Washington defendants do not enjoy a recognized right to express unanimity. In *Arndt*, this court

---

[2] "Adequately supported" in this context means that a rational jury could find that each element is supported beyond a reasonable doubt. *See, e.g., State v. Green*, 94 Wn.2d 216, 230, 616 P.2d 628 (1980). Constitutional due process requires the prosecution to present evidence on "every fact necessary to constitute the crime" and the jury to find each element satisfied beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970).

declared that defendants have no right to unanimity as to means so long as all means alleged are (1) supported by sufficient evidence and (2) "'not repugnant'" to one another. 87 Wn.2d at 378-79 (quoting *State v. Kosanke*, 23 Wn.2d 211, 213, 160 P.2d 541 (1945)). *Sandholm* most recently restated this general rule: "In alternative means cases, where the criminal offense can be committed in more than one way, we have announced a rule that an expression of jury unanimity is not required provided each alternative means presented to the jury is supported by sufficient evidence." 184 Wn.2d at 732.

B.   The Court of Appeals Incorrectly Reasoned That a Complete Lack of Evidence for One Alternative Renders Any Unanimity Error Harmless

Before the Court of Appeals, Woodlyn argued that the jury's general verdict must be reversed because the State failed to present sufficient evidence to support both alternative means of the crime charged. The State conceded that it had presented no evidence of one alternative—theft by taking—and instead focused entirely on theft by deception. Nevertheless, the State maintained that any error was harmless because the court could safely conclude that the jury, though instructed on two alternative means, relied solely on the means supported by sufficient evidence. The Court of Appeals agreed, finding that when one alternative is adequately supported and the other is

entirely unsupported, courts may assume the jury relied on the supported means.[3] *Woodlyn*, slip op. at 7, 10. We disagree.

A general verdict satisfies due process only so long as each alternative means is supported by sufficient evidence. *Arndt*, 87 Wn.2d at 377-378. If there is insufficient evidence to support *any* of the means, a "particularized expression" of jury unanimity is required. *Owens*, 180 Wn.2d at 95 (citing *Ortega-Martinez*, 124 Wn.2d at 707-08). Thus, a reviewing court is compelled to reverse a general verdict unless it can *"rule out the possibility* the jury relied on a charge unsupported by sufficient evidence." *Wright*, 165 Wn.2d at 803 n.12.

In essence, the approach adopted by the Court of Appeals asserts that a complete *lack* of evidence for one alternative allows courts to "rule out" the possibility that any member of the jury relied on the factually unsupported means. *Woodlyn*, slip op. at 1 (suggesting that any error is harmless because the court "can determine from the record that the jury's verdict was based on only one means"); *Wright*, 165 Wn.2d at 803 n.12. This defies logic. As Woodlyn observes, "It would be a curious rule if insufficient evidence of the alternative both gives rise to the error and renders it harmless." Pet. for

---

[3] The Court of Appeals decision followed the reasoning of previous published Court of Appeals decisions. *See State v. Witherspoon*, 171 Wn. App. 271, 285-87, 286 P.3d 996 (2012) (plurality opinion); *State v. Rivas*, 97 Wn. App. 349, 354-55, 984 P.2d 432 (1999). By our decision today, we expressly disapprove of this reasoning.

Review at 9. A post hoc review of the record does not allow an appellate court to see into the minds of jurors. This exercise does not dispel the possibility that the jury might have convicted based on insufficient evidence. Indeed, given that the trial court instructed the jury in this case on two alternative means, CP at 72-73, it would be reasonable for the jurors to think that either alternative represented a viable path to conviction. Suppl. Br. of Pet'r at 15 ("'If the judge tells a jury that they may find the defendant guilty on a theory that is factually unsupported . . ., the jurors understandably might believe that there must be evidence to support that theory.'" (quoting *Commonwealth v. Plunkett*, 422 Mass. 634, 639-40, 664 N.E.2d 833 (1996))). Absent some form of colloquy or explicit instruction, we cannot assume that every member of the jury relied solely on the supported alternative.

The approach adopted by the Court of Appeals is also impractical. In effect, the rule would recognize that a defendant is entitled to express jury unanimity when the evidence is insufficient to support one of the means charged, but not when the evidence supporting that means is entirely lacking. Thus, it burdens the appellate courts with distinguishing between evidence that is *merely* insufficient and evidence that is *totally* insufficient.

The United States Supreme Court in *Griffin v. United States* was asked to adopt a similar rule: that due process is satisfied only "when the prosecution presents *no*

-11-

*evidence whatever* to support the insufficient [means, and not when] the prosecution offers *some*, but insufficient, evidence." 502 U.S. 46, 58, 112 S. Ct. 466, 116 L. Ed. 2d 371 (1991). The court soundly rejected this proposed distinction:

> [The petitioner's] novel theory posits two different degrees of failure of proof— a failure that is *sufficiently* insufficient, [which will be deemed harmless,] and one that is *insufficiently* insufficient[, which will not be deemed harmless]. Besides producing an odd system in which the greater failure of proof is rewarded, the rule seems to us full of practical difficulty.

*Id.* (second emphasis added); *see also People v. Guiton*, 4 Cal. 4th 1116, 1127, 847 P.2d 45, 17 Cal. Rptr. 2d 365 (1993) ("[w]e agree with the [*Griffin*] court in rejecting the distinction between evidence that is sufficiently insufficient and evidence that is insufficiently insufficient"). Although this court departed from *Griffin* in *Ortega-Martinez* by asserting that Washington's constitution affords criminal defendants additional due process protections, we did not reject the reasoning quoted above, and it retains persuasive force. We decline to adopt a rule that relies on a complete evidentiary failure as proof of harmless error.

While we reject the Court of Appeals harmless error analysis, we nevertheless affirm Woodlyn's conviction because our review of the record confirms that sufficient evidence was presented to support both alternative means of committing second degree theft.

C.     Applying *Arndt,* the State Presented Sufficient Evidence To Affirm Woodlyn's Conviction

As noted, in its briefing to this court the State withdrew its factual concession concerning the sufficiency of the evidence of theft by taking. The State now primarily argues that sufficient evidence supports both alternative means, as "[a] rational juror could find that Woodlyn both used deception and wrongfully obtained more than $750 from Kjellerson." Suppl. Br. of Resp't at 9.[4]  Because both alternative means in this case are supported by a common set of facts, we affirm on this basis. *See Arndt,* 87 Wn.2d at 376.

Woodlyn concedes that the State presented sufficient evidence to support the first alternative—that a reasonable jury could have found Woodlyn "obtained control" over Kjellerson's property "by color or aid of deception." Suppl. Br. of Pet'r at 16-17; CP at 72.  However, Woodlyn argues that the State did not present sufficient evidence to support the theft by taking alternative. The Court of Appeals concurred, finding that "'[n]o evidence of theft by taking was presented to the jury.'" *Woodlyn,* slip op. at 6, 10 (alteration in original). We cannot agree. Based on the record, a rational jury could have concluded beyond a reasonable doubt that Woodlyn "wrongfully obtained"

_____

[4] The State also asks this court to adopt the Court of Appeals analysis as a fallback position. *See* Suppl. Br. of Resp't at 15.

control of Kjellerson's property. *See, e.g., State v. Green*, 94 Wn.2d 216, 230, 616 P.2d 628 (1980) (plurality opinion) (stating the sufficiency of evidence standard).

To support conviction based on theft by taking in the second degree, the State was required to prove three things: that Woodlyn, with intent to deprive, (1) wrongfully obtained control over (2) Kjellerson's property, and (3) that the value of said property exceeded $750. RCW 9A.56.020(1)(a), .040(1)(a); CP at 72. To "wrongfully obtain[]" means to take without consent. RCW 9A.56.010(22). Woodlyn argues the jury could not have found he "wrongfully obtained" Kjellerson's property because "Kjellerson gave Woodlyn permission to cash the checks, that is, she consented to the taking." Suppl. Br. of Pet'r at 3. This argument rests on a misreading of RCW 9A.56.020.

There is no dispute that Kjellerson voluntarily gave Woodlyn checks to cash. However, the implication of Woodlyn's consent argument—that property, once voluntarily given, cannot be stolen—is inconsistent with our case law. *See State v. Clark*, 96 Wn.2d 686, 691, 638 P.2d 572 (1982) (exceeding the scope of permitted use may constitute theft). Importantly, Kjellerson's *checks* are not the property at issue, so whether she gave them to Woodlyn voluntarily is irrelevant. Instead, Woodlyn is charged with obtaining Kjellerson's *money* without consent. He did so by altering the checks she gave him. On this record, it was reasonable for the jury to conclude that Woodlyn did not have Kjellerson's consent to withdraw $1,865 from her account.

Woodlyn cashed Kjellerson's first check ($60) on July 25, 2011. VRP (Nov. 18, 2013) at 746. Kjellerson apparently approved the withdrawal when a bank employee called to confirm. VRP (Nov. 14, 2013) at 609-11. The next month, Kjellerson agreed to pay Woodlyn an additional $60 for yard work. VRP (Nov. 18, 2013) at 687 (witness testimony that Kjellerson told police she had paid Woodlyn $60 during the month of August). Even assuming that Kjellerson accurately distinguished between the $60 she agreed to pay in August and $60 paid in the last week of July,[5] Woodlyn had consent to withdraw no more than $120 of Kjellerson's money. Yet, Woodlyn cashed a second check on July 26, 2011 ($60), and five checks in August: August 3 ($260), August 4 ($260), August 8 ($360), August 11 ($440), and August 12 ($425). VRP (Nov. 13, 2013) at 453-56; VRP (Nov. 18, 2013) at 746-51.[6] In total, Woodlyn withdrew $1,865 from Kjellerson's account. Because Kjellerson had agreed to pay Woodlyn at most $120, he obtained the difference ($1,745) without consent. Based on this evidence, a

---

[5] Kjellerson suffered from dementia; her niece testified that she could not discern the date or month. VRP (Nov. 13, 2013) at 500.

[6] Woodlyn testified that the money was not meant for him, claiming that he cashed the checks for Kjellerson as a favor and gave her the money. VRP (Nov. 18, 2013) at 746-51, 752. However, he inconsistently testified that the money was repayment for yard work (the exact amount is unclear) and other chores. *Id.* at 722. Given the evidence that Kjellerson's grass was roughly one foot tall on August 27, 2013, *id.* at 688-89, it would be reasonable for the jury to view Woodlyn's claim that he earned the money doing yard work with skepticism, and to reject his explanation. *See id.* at 722 (Woodlyn testifying that he cut Kjellerson's grass three, "maybe even five," times in the month of August).

-15-

rational jury could reasonably conclude that Woodlyn "wrongfully obtained" (took without consent) Kjellerson's property (her money) exceeding $750 in value. *See* CP at 72. Therefore, contrary to the State's earlier concession and the Court of Appeals conclusion, the record in this case provides sufficient evidentiary support for the alternative means of theft by taking. Because both instructed alternative means were adequately supported, the jury's general verdict of guilt may be upheld. *See Arndt*, 87 Wn.2d at 376. We affirm Woodlyn's conviction.

## CONCLUSION

The constitutional right to jury unanimity cannot be interpreted to permit the harmless error analysis adopted by the Court of Appeals. We reject this approach and decline to burden trial courts with the task of distinguishing between evidence that is sufficiently insufficient and that which is insufficiently insufficient. Applying the settled principle that there is no right to express jury unanimity so long as each alternative means is supported, we nonetheless affirm Woodlyn's conviction. The record contains sufficient evidence of both theft by deception and theft by taking to support the jury's general verdict of guilty on charges of second degree theft.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Stephens, J.

WE CONCUR:

Fairhurst, C.J.

Wiggins, J.

Johnson, J.

González, J.

Madsen, J.

Gordon McCloud, J.

Owens, J.

Yu, J.

-17-